**Date Signed:**
**November 24, 2026**

SO ORDERED.

Neil J. Verbrugge
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>SUZAN ANN FORBES,<br><br>Debtor. | Case No.: 24-00950<br>(Chapter 7)<br><br>Re: Dkt. Nos. 129, 141, 152 |

## CORRECTED[1] MEMORANDUM DECISION ON: (1) SQUARE ONE LEGAL LLLC'S MOTION FOR RECONSIDERATION, (2) CHAPTER 13 TRUSTEE'S MOTION FOR INSTRUCTIONS, AND (3) SQUARE ONE LEGAL LLLC'S SUPPLEMENTAL MOTION FOR RECONSIDERATION

The Court ordered debtor Suzan Ann Forbes ("Debtor") chapter 13 case converted to a chapter 7 case. Thereafter, Debtor's counsel Square

[1] As explained in the order entered contemporaneously with this corrected memorandum decision, pursuant to Federal Rule of Civil Procedure 60(a), made applicable by Federal Rule of Bankruptcy Procedure 9024, the memorandum decision is corrected nunc pro tunc to November 10, 2026, solely to correct certain inadvertent typographical and clerical errors as more fully detailed in the order. The corrections make no substantive changes and do not alter the original effective date for appeal purposes.

One Legal LLLC requested this Court direct the Standing Trustee disburse funds to pay Debtor counsel's chapter 13 administrative expense claim. In response, the Standing Trustee requested the Court issue instructions to clarify whether he should disburse funds he is holding to pay Debtor counsel's chapter 13 administrative expense claim or turnover those funds to the chapter 7 Trustee. Because there is substantial overlap in the issues raised by Square One Legal LLLC's Motion for Reconsideration of Trustee's Motion to Dismiss Case and Amended First Interim Application for Compensation and Expense Reimbursement by Counsel for Debtor ("Motion for Reconsideration")(Dkt. No. 129), the Chapter 13 Trustee's Motion for Instructions Regarding Disposition of Funds held Post-Conversion ("Motion for Instructions")(Dkt. No. 141), and Square One Legal LLLC's Supplemental Motion for Reconsideration of Trustee's Motion to Dismiss Case and Amended First Interim Application for Compensation and Expense Reimbursement by Counsel for Debtor and Response to Chapter 13 Trustee's Motion for Instructions Regarding Disposition of Funds held Post-Conversion ("Supplemental Motion for



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 2 of 45

Reconsideration")(Dkt. No. 152), the Court issues this Memorandum Decision to address and resolve, on an omnibus basis, the Motion for Reconsideration, Motion for Instructions, and the Supplemental Motion for Reconsideration. Having considered the Parties' arguments, the applicable law, and the record, and for the reasons explained below, the Motion for Reconsideration is DENIED, the Supplemental Motion for Reconsideration is DENIED, and the Motion for Instructions is GRANTED.

## I. FACTS AND PROCEDURAL BACKGROUND

1. On October 14, 2024, Debtor filed a chapter 13[2] bankruptcy petition and most of her required schedules and statements. Dkt. No. 1.

2. Debtor's Schedule A/B disclosed her ownership of a single-family home located at 520 Lunalilo Home Road, Honolulu, Hawaii, (the "House") valued at $1,100,000.00. Dkt. No. 1. Debtor's Schedule D disclosed the following secured creditors with total claims in the amount of $642,000.00 secured by the House composed of: (1) AOAO of the Peninsula

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 3 of 45

at Hawaii Kai: $12,000, (2) BONY Mellon: $170,000, and (3) BONY Mellon $460,000. From Debtor's Schedules, she claimed substantial equity in her home.

3. Debtor's response to Question 9 on her Statement of Financial Affairs disclosed a pending state court foreclosure case, *In the Circuit Court of the First Circuit, State of Hawaii, Civil No. 1CCV-24-0000398*.

4. The following facts, the significance of which will be explored in the discussion below, are critical to note: (1) Debtor's Schedule E/F omitted disclosing any claim by Creditor Rosemary A. Crites, Individually and as Trustee of the Rosemary A. Crites 2010 Trust as Amended and Restated on September 21, 2021 ("Creditor Crites"), and (2) Debtor's verified Creditor Matrix did not list Creditor Crites or her address.

5. Debtor's Schedule E/F disclosed student loans in the amount of $167,328.00 and other nonpriority unsecured debts in the amount of $34,483.43, for total nonpriority unsecured claims in the amount of $201,811.43.

6. On October 16, 2024, the Clerk issued a Notice of Case setting a deadline for all non-governmental creditors to file a proof of claim by December 26, 2024.

7. On November 21, 2024, Debtor filed her Schedules I & J. Dkt. No. 11.

8. On November 21, 2024, Debtor filed her chapter 13 plan ("Plan"). Dkt. No. 12.

9. Debtor's Plan proposed monthly payments of $500 for 12 months and a "step-up" in monthly payments of $10,800 for 48 months, along with a provision requiring Debtor to file a motion to modify plan if she needed more than 12 months to seek a loan modification.

10. Debtor's Plan estimated 100% payment on unsecured claims and stated the total amount of nonpriority (general) unsecured debt was $201,811.43.

11. On January 5, 2025, Debtor proposed an Amended Plan ("Amended Plan"). Dkt. No. 24.

12. Debtor's Amended Plan proposed monthly payments of $500 for 12 months and additional funding of $42,000 by selling her House by October 17, 2025.

13. Debtor's Amended Plan estimated 100% payment on unsecured claims and stated the total amount of nonpriority (general) unsecured debt was $201,811.43. Section 12 of Debtor's Plan provided for a "nonstandard provision" allowing Debtor to pay her student loans in the amount of $167,961.24 directly to Nelnet.

14. On February 18, 2025, Debtor filed Amended Schedule A/B correcting the address for her House valued at $1,100,000.00.

15. On February 21, 2025, the Court entered an order confirming the Debtor's Amended Plan. Dkt. No. 31.

16. On August 15, 2025, the Debtor moved to modify the confirmed Plan with proposed payments of $500 for 12 months and additional funding of $132,000 by selling her home by December 17, 2025. Dkt. No. 47.



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 6 of 45

17. Debtor's Motion to Modify Confirmed Plan estimated 100% payment on unsecured claims and listed the total amount of allowed timely filed nonpriority unsecured claims of $18,720.22.

18. On September 8, 2025, Debtor filed a Motion to Approve Sale of Real Property ("Sale Motion") seeking to sell her House for $1,245,000.00. Dkt. No. 51.

19. Debtor's Sale Motion attached an estimated seller's statement which estimated, after payment of secured creditors and costs of sale, net proceeds to the seller in the amount of $474,377.64. From the net proceeds, Debtor's Sale Motion proposed escrow disbursing $30,000 to the Standing Trustee for plan payments with the surplus refunded to the Debtor.

20. On September 18, 2025, the Debtor withdrew her Sale Motion. Dkt. No. 59.

21. On October 3, 2025, the Court entered an Order Granting Motion to Modify Confirmed Plan ("Confirmed Modified Plan"). Dkt. No. 63.

22. The Order to Modify Confirmed Plan, Section 10.1, titled "Vesting of Property of the Estate", provides that:

> Upon entry of an order confirming this plan, property of the estate vests in the debtor, except any claims against third parties and undisclosed assets. If the case is converted to a case under another chapter, or is dismissed, the property of the estate shall vest in accordance with applicable law.

23. On November 12, 2025, The Bank of New York Mellon fka The Bank of New York, as trustee for the certificateholders Cwalt, Inc., Alternative Loan Trust 2006-30T1, Mortgage Pass-Through Certificates, Series 2006-30T1 ("BONYM") file a Motion for Relief from Stay to continue its foreclosure action against the Debtor's single-family home. BONYM asserted it was owed $493,242.87 as of October 14, 2025, which amount included $59,107.50 in prepetition arrears and $40,295.52 in post-petition arrears. Dkt. No. 67.

24. On February 10, 2026, the Standing Trustee filed a Motion to Dismiss Case pursuant to 11 U.S.C. § 1307(c) citing material default under the Confirmed Plan.

25. On February 17, 2026, Debtor filed her second Motion to Approve Sale of Real Property ("Second Sale Motion") seeking to sell her House for $1,226,250.00. Dkt. No. 78.

26. Debtor's Second Sale Motion estimated, after payment of secured creditors and costs of sale of $718,708.87, net proceeds to the seller in the amount of $507,541.13. From the net proceeds, Debtor's Sale Motion proposed escrow disbursing $33,000 to the Standing Trustee for plan payments with the surplus refunded to the Debtor.

27. On March 10, 2026, the Court entered an Order Granting the Second Sale Motion. Dkt. No. 87.

28. On April 28, 2026, Debtor filed a Report of Sale disclosing that from the gross sales price of $1,226,250.00, after payment of $767,963.10 (for secured creditors, costs of sale, and disbursement to the Standing Trustee), net proceeds were refunded to the seller in the amount of $474,911.55. Dkt. No. 93.

29. On April 30, 2026, BONYM withdrew its motion for relief from stay. Dkt. No. 94.

30. On May 14, 2026, Creditor Crites filed Proof of Claim No. 15 ("POC 15") in the claims register asserting a claim in the amount of $1,543,839.69. POC 15 included pleadings showing she obtained a default judgment against the Debtor in Oregon State Court on April 14, 2023, for securities law damages, interest, and attorneys' fees in the amount of $1,344,236.69, and on October 2, 2023, a supplemental judgment against Debtor in Oregon State Court for attorneys' fees and costs in the amount of $199,603, for a combined judgment amount of $1,543,839.69 as of October 2, 2023. In the Oregon State Court Action, Creditor Crites identified herself as a 77-year-old, single woman and alleged she was solicited by Debtor (and others) with false statements to invest into an assisted living center in Florida. Creditor Crites alleged she invested about $1.4 million in proceeds from her inherited family farmland into the assisted living center in Florida and suffered damages arising therefrom.

31. On May 29, 2026, Debtor's counsel ("Applicant") filed an application for compensation ("Fee Application"): (1) allowing an award of total compensation in the amount of $22,350.00 (composed of $21,793.84

in attorney fees and $556.16 in expenses), (2) authorizing Applicant to withdraw $37.00 from its client trust account in partial satisfaction of allowed compensation, and (3) directing the Standing Trustee to allow and pay to Applicant fees in the amount of $22,313.00 as a priority administrative claim in Debtor's chapter 13 case. Dkt. No. 96.

32. On June 6, 2026, Applicant filed an Amended Fee Application for compensation, Dkt. No. 98, that was withdrawn that same day, Dkt. No. 99.

33. On June 6, 2026, Applicant filed an Amended First Interim Application for Compensation and Expense Reimbursement by Counsel for Debtor ("Second Amended Fee Application") for compensation: (1) allowing an award of total compensation in the amount of $22,302.22 (composed of $21,746.06 in attorney fees and $556.16 in expenses), (2) authorizing Applicant to withdraw $37.00 from its client trust account in partial satisfaction of allowed compensation, and (3) directing the Standing Trustee to allow and pay to Applicant fees in the amount of $22,265.22 as a priority administrative claim in Debtor's chapter 13 case. Dkt. No. 100.

34. On June 30, 2026, Creditor Crites filed a Motion to Extend the Deadline to file Proof of Claim ("Motion to Extend") stating, *inter alia*, that Creditor Crites: (1) did not learn of Debtor's bankruptcy filing until May 7, 2026 (and only because her counsel obtained an Intelius Report as part of the process of registering the Oregon State Judgment in Hawaii), and (2) was not properly notified of Debtor's bankruptcy case. Dkt. No. 105.

35. On June 30, 2026, the Standing Trustee filed an Objection to Applicant's Second Amended Fee Application. Dkt. No. 107. The Standing Trustee stated he received a $33,000 disbursement from escrow in connection with the sale of the Debtor's House and he currently held $22,508.17 of those funds. The Standing Trustee objected to payment of Debtor's counsel's compensation because the Debtor's modified Plan had provided for 100% payment of unsecured claims, which did not consider Creditor Crites's claim in the amount of $1,543,839.69.

36. Also, on June 30, 2026, Creditor Crites filed an Objection to Applicant's Second Amended Fee Application. Dkt. No. 109.

37. On July 10, 2026, Applicant filed its Reply to the Objections to the Second Amended Fee Application. Dkt. No. 110.

38. On July 10, 2026, Applicant filed a Reply in support of its Second Amended Fee Application. Attached to Applicant's Reply was an exhibit showing the Standing Trustee had funds on hand in the amount of $22,508.17. Applicant stated the first time it "got wind" of Creditor Crites's claim was on May 14, 2026, the date Creditor Crites filed her POC. 15. Applicant argued its fee application should be allowed because the Debtor could instruct Applicant to voluntarily dismiss the case.

39. At the July 14, 2026 hearing on Applicant's Second Amended Fee Application, the Court expressed concern about granting Applicant's compensation request prematurely in the event Debtor was to raise issue with counsel's representation in view of Creditor Crites lack of notice of her bankruptcy case. Debtor's counsel disavowed advance knowledge of Creditor Crites's claim. The Court observed that it was highly unlikely that Debtor's failure to schedule Creditor Crites's claim was due to her attorney's mistake. The Court continued the hearing on the Second

Amended Fee Application to August 4, 2026, to coincide with the hearing on the Standing Trustee's Motion to Dismiss.

40. On August 3, 2026, Creditor Crites filed an adversary complaint against Debtor (Adv. Pro. No. 26-90023). Creditor Crites complaint identifies herself as an 83-year-old single woman and alleges claims for abuse of process, turnover, and avoidance of post-petition transfers, and conversion.

41. On August 10, 2026, the Court granted Creditor Crite's Motion to Extend time to File Proof of Claim.

42. In the meantime, the Court continued the hearing on the Standing Trustee's Motion to Dismiss from March 24, 2026, to May 5, 2026, June 9, 2026, and to August 4, 2026.

43. At the August 4, 2026 hearing on the Standing Trustee's Motion to Dismiss and Applicant's Second Amended Fee Application, the Court expressed concern that Debtor was obligated to notify all her creditors of her bankruptcy case but had not done so. The Court expressed discomfort with Debtor having received substantial funds from the sale of her home

without providing notice to all her creditors.  The Court continued the hearing to August 19, 2026.

44. On August 19, 2026, the Court found it hard to believe the Debtor did not know about the omitted creditor given Creditor Crites's default judgment (and service) obtained against Debtor in the Oregon State Court action.  Because the Court was troubled by the injustice of the circumstances, the Court ruled that the Debtor's case be converted to a case under chapter 7 of the Bankruptcy Code, "effective now."  In doing so, the Court expressed a desire to have a chapter 7 trustee investigate whether any "claw back" could be accomplished.  The Court also ruled that it was inclined to grant Applicant's Second Fee Application.  Dkt. No. 123.

45. On August 20, 2026, the Court entered a written order converting Debtor's chapter 13 case to a chapter 7 case ("Conversion Order").  Dkt. No. 124.  Along with the Conversion Order, the Clerk issued a Notice of Case noting the chapter 7 trustee was Elizabeth A. Kane (the "Chapter 7 Trustee").  Dkt. No. 124.



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 15 of 45

46. On August 31, 2026, Applicant filed a Motion for Reconsideration of Trustee's Motion to Dismiss case and Amended First Interim Application for Compensation and Expense Reimbursement ("Motion for Reconsideration"). Dkt. No. 129. Applicant's Motion for Reconsideration requested additional language in the form of order granting its compensation application and the Conversion Order to make clear the Standing Trustee was directed to pay Applicant's administrative expense claim "notwithstanding the Order Converting Chapter 13 case to Chapter 7 Case."

47. On August 31, 2026,[3] the Court entered an Order Granting Application for Additional Fees and Expenses ("Order Granting Compensation"). Dkt. No. 130. The Order Granting Compensation provided:

> [T]he court allows and awards the amounts below.
> ….
> Fees $21,746.06
> Expenses $556.16
> Less Funds held in Client Trust Account $37.00

[3] On August 31, 2026, Judge Robert J. Faris retired and entered recall status. On September 1, 2026, this case was reassigned to Chief Bankruptcy Judge Neil J. Verbrugge.

> Fees and expenses to be paid through the plan: $22,265.22
> ….
> Trustee shall make distributions to the Applicant in a one-time payment of $22,265.22 be paid as an 11 USC § 507(a)(2) administrative claim. Applicant is authorized to withdraw the sum of $37.00 from its Client Trust account in partial satisfaction of the amounts sought on this Application.

48. On September 3, 2026, Applicant filed Proof of Claim No. 16 requesting compensation for attorneys' fees incurred in debtor's chapter 13 case ("Request for Administrative Expense Compensation").

49. On September 14, 2026, the Standing Trustee filed a Motion for Instructions regarding Disposition of Funds held Post-Conversion. Dkt. No. 141. The Standing Trustee framed his need for instructions as follows:

> Given this background, Trustee is caught in a legal conflict between the mandates under § 348(e) and § 348(f)(1)(A) to immediately terminate Chapter 13 administration and to transfer prepetition asset proceeds to the newly appointed Chapter 7 Trustee and this Court's post-conversion Order entered on August 31, 2026 directing the Trustee to distribute a portion of funds held by Trustee to Counsel for Debtor.

50. At the October 5, 2026 hearing on Applicant's Motion for Reconsideration, Debtor's counsel and the Standing Trustee's counsel confirmed the funds held by the Standing Trustee were proceeds of the sale of the House, and none of the funds were from Debtor's wages. The Court continued the hearing on the Motion for Reconsideration to coincide with the continued hearing on the Standing Trustee's Motion for Instructions on November 2, 2026. Dkt. No. 149. Also, the Court granted the Parties the opportunity to file supplemental memoranda by October 14, 2026.

51. On October 14, 2026, Applicant filed its Supplemental Motion for Reconsideration. Dkt. No. 152. Applicant's Supplemental Motion for Reconsideration disputed the Court's authority to order, sua sponte, conversion of the chapter 13 case to a chapter 7 case and requested the Court "set aside the order converting the case to chapter 7 and dismiss the case." Applicant requests the Standing Trustee pay his administrative expense claim in the amount of $22,508.17 arguing section 348(f)(1)–(2) does not apply to the funds held by the Standing Trustee because these funds are not "under the control of the debtor."

52. On October 23, 2026, Creditor Crites filed her Opposition to Applicant's Supplemental Motion for Reconsideration. Dkt. No. 155. Creditor Crites's Opposition argues Applicant's request to set aside the Conversion Order is untimely.

53. On November 2, 2026, the Court held a hearing on the Applicant's Motion for Reconsideration, Supplemental Motion for Reconsideration, and the Standing Trustee's Motion for Instructions. Appearances were made by Ofir Raviv, Esq. for Applicant, Walter Hebblethwaite, Esq. for the Standing Trustee, Alika Piper, Esq. for Creditor Crites, and the Chapter 7 Trustee. No other party appeared. Having heard the arguments of counsel, and reviewed the motions and responses, along with the records and files in this case, the Court took the matter under submission to issue a formal written decision.

## II. APPLICABLE LAW

### A. RELIEF UNDER RULE 9023 AND 9024

Rule 59(e) of the Federal Rules of Civil Procedure, incorporated by Rule 9023 of the Federal Rules of Bankruptcy Procedure, permits a court to alter or amend a judgment or order. However, such relief is an

extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources. Accordingly, a motion for reconsideration should not be granted unless the moving party demonstrates (1) newly discovered evidence, (2) that the court committed clear error, or (3) an intervening change in controlling law. *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Rule 60 of the Federal Rules of Civil Procedure, made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides for relief from judgment or order in certain circumstances including mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, fraud or misconduct, void or satisfied judgment, or any other reason that justifies relief. *In re Williams*, 287 B.R. 787, 792 (B.A.P. 9th Cir. 2002). To obtain relief under Civil Rule 60(b), the moving party must show entitlement to one of the specified grounds for relief.[4] Relief under Civil

---

[4] The grounds for relief under Civil Rule 60(b) are:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

Rule 60(b)(6) is used sparingly and only under extraordinary circumstances. *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007)(citing *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

**B. 11 U.S.C. § 348(f)**

Section 348(f) provides:

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title--

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claims in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan; and

(C) with respect to cases converted from chapter 13--

(i) the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under

---

(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; its based on an earlier judgment that has been reversed or vacated; or applying its prospectively is no longer equitable; or
(6) any other reason that justifies relief.

applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13; and
(ii) unless a prebankruptcy default has been fully cured under the plan at the time of conversion, in any proceeding under this title or otherwise, the default shall have the effect given under applicable nonbankruptcy law.

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

**C. 11 U.S.C. § 1307(c)**

Section 1307(c) provides:

(c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including--

(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28;
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);
(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or
(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

## III. DISCUSSION

When a litigant's motion under Rule 9023 fails to demonstrate clear error, an intervening change in the law, or newly discovered evidence, denial of the motion is appropriate. Nothing in Applicant's Motion for Reconsideration established clear error, an intervening change in the law, or newly discovered evidence to grant relief under Rule 9023. Therefore, the Court denies Applicant's Motion for Reconsideration.

Further, nothing in Applicant's Supplemental Motion for Reconsideration demonstrated any mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, fraud or misconduct, void

or satisfied judgment, or any other reason that justifies relief from the Conversion Order under Rule 9024. Therefore, the Court denies Applicant's Supplemental Motion for Reconsideration.

The Court grants the Standing Trustee's Motion for Instructions and orders the Standing Trustee to turn over all funds in his possession to the Chapter 7 Trustee.

### A. APPLICANT'S MOTION FOR RECONSIDERATION AND SUPPLEMENTAL MOTION FOR RECONSIDERATION WERE TIMELY FILED AND MAY BE RESOLVED BY THE COURT AT THIS TIME.

#### 1. Applicant's Motion for Reconsideration was Timely Filed under Rule 9023.

Applicant's Motion for Reconsideration was filed on August 31, 2026, and sought limited relief, namely alteration of the Conversion Order and the proposed Order Granting Compensation to direct the Standing Trustee to pay Applicant's administrative expense claim. Applicant filed its Motion for Reconsideration within 14 days of the entry of the Conversion Order on August 20, 2026,[5] which ruled on the Trustee's Motion to Dismiss,

[5] Because entry of the Conversion Order ended the litigation on the merits of the Court's authority to order conversion of the chapter 13 case to a chapter 7 case, it was final for

and on the same day as the Court entered the Order Granting Compensation.[6] Therefore, Applicant's Motion for Reconsideration was timely filed.

**2. Applicant's Supplemental Motion for Reconsideration was timely filed as a Motion for Relief from Judgment or Order under Rule 9024.**

At the October 5, 2026 hearing on Applicant's Motion for Reconsideration, the Court continued the hearing to November 2, 2026, to coincide with the continued hearing on the Standing Trustee's Motion for Instructions and set a deadline of October 14, 2026, for Applicant to file a response opposing the Standing Trustee's Motion for Instructions. On October 14, 2026, Applicant filed a Supplemental Motion for

---

purposes of appeal. *See In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008) (stating order converting case under chapter 11 to a case under chapter 7 determines finally the discrete issue to which it is addressed, i.e., whether or not the case will be converted, and is a final appealable order), *overruled on other grounds*, *In re Nichols*, 10 F.4th 956, 964 (9th Cir. 2021); *In re O'Hara*, 167 F.4th 358, 370 (6th Cir. 2026) (ruling order converting chapter 13 case to chapter 7 case was final and appealable order).

[6] The Order Granting Compensation was an interlocutory order. Local Bankruptcy Rule ("LBR") 9024-1 requires a "motion for reconsideration of an interlocutory order must be filed no later than 14 days after the entry of the order."

Reconsideration of the Trustee's Motion to Dismiss and the Second Amended Fee Application. Dkt. No. 152.

The Parties dispute whether Applicant's Supplemental Motion for Reconsideration should be considered by the Court. The dispute arises because Applicant's Supplemental Motion for Reconsideration challenged, for the first time, the Court's authority under section 1307(c) to order, sua sponte, conversion of the chapter 13 Case to a chapter 7 case and requested the Court "set aside the order converting the case to chapter 7 and dismiss the case." Creditor Crites argues that Applicant's Supplemental Motion for Reconsideration's request to set aside the Conversion Order should be denied as untimely because Applicant did not file an appeal of the Conversion Order within 14 days as set forth in Rule 8002(a)(1).

The Court does not believe Applicant's failure to file an appeal of the Conversion Order makes its Supplemental Motion for Reconsideration entirely untimely. Applicant's filing of the Motion for Reconsideration within 14 days of the Conversion Order had the effect of extending the time to file an appeal from the date of the entry of an order adjudicating

the Motion for Reconsideration. *See* Rule 8002(b)(1). Since the Court had not yet adjudicated the merits of the Motion for Reconsideration, the time to file a notice of appeal of the Conversion Order had not yet run and could not be grounds to deny consideration of Applicant's Supplemental Motion for Reconsideration.

Although Applicant's Supplemental Motion for Reconsideration was filed more than 14 days after the Conversion Order, the Court may treat a motion to reconsider that is untimely filed under Rule 9023 as a motion for relief from judgment or order under Rule 9024. Because Applicant filed its Supplemental Motion for Reconsideration "within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding", Applicant's Supplemental Motion for Reconsideration may be considered as a motion for relief from order under Rule 9024.[7]

---

[7] As a procedural matter, the Court set a deadline of October 14, 2026, for Applicant to file its Opposition or Statement in response to the Standing Trustee's Motion for Instructions. Applicant's Supplemental Motion for Reconsideration raises some arguments under section 348(f) that are directly related to the Standing Trustee's Motion for Instructions that sought further guidance from the Court to resolve whether he should disburse the funds held by him to the Chapter 7 Trustee or to pay Applicant's

## B. APPLICANT'S MOTION FOR RECONSIDERATION IS DENIED FOR FAILURE TO DEMONSTRATE GROUNDS FOR RELIEF UNDER RULE 59

Applicant's Motion for Reconsideration sought limited relief, namely alteration of the Conversion Order and the proposed Order Granting Compensation to direct the Standing Trustee to pay Applicant's administrative expense claim. Because Applicant's Motion for Reconsideration does not raise any issues of newly discovered evidence or intervening change in controlling law, the Court addresses whether Applicant has established clear error of law by the Court. Upon review, the Court concludes Applicant has failed to demonstrate clear error of law by the Court necessitating the relief requested by Applicant. Therefore, Applicant's Motion for Reconsideration is denied because nothing in

---

compensation in the amount of $22,265.22. Applicant's Supplemental Motion for Reconsideration, however, seeks relief from the Conversion Order challenging the Court's authority to order conversion and appears to go beyond the scope of the Standing Trustee's Motion for Instructions. LBR 9013-1(d) allows Applicant to file, together with the response to the motion, a countermotion raising only the same specific issues, claims, or defenses presented in the Standing Trustee's original Motion for Instructions. Because the Court may consider Applicant's Supplemental Motion for Reconsideration as a motion for relief from judgment or order under rule 9024, the Court need not resolve the question of whether Applicant's Supplemental Motion for Reconsideration complied with LBR 9013-1(d).

Applicant's Motion for Reconsideration established any newly discovered evidence, clear error, or intervening change in controlling law.

Applicant asks the Court to alter or amend the Conversion Order and the Order Granting Compensation to direct the Standing Trustee to pay Applicant's fee award from funds held by the Standing Trustee.[8] Applicant argues the funds held by the Standing Trustee are no longer in the Debtor's control on the date of conversion and cannot be considered property of the chapter 7 estate for purposes of section 348(f). The Court rejects Applicant's argument that the sales proceeds held by the Standing Trustee are not property of the chapter 7 estate for several reasons.

First, the plain language of the statute is conclusive. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (stating it well established that "when the statute's language is plain, the sole function of the courts—at least where

[8] For clarity, the Court reaffirms the provision of the Order Granting Compensation that authorizes Applicant to withdraw the sum of $37.00 from its Client Trust Account in partial satisfaction of the amounts sought in the Application. Dkt. No. 130. No Party opposed this provision of the Order Granting Compensation, and at the November 2, 2026 hearing, Applicant confirmed his engagement retainer agreement with Debtor granted Applicant a possessory security interest in the $37.00 in funds held in its Client Trust Account for services it has performed.

the disposition required by the text is not absurd—is to enforce it according to its terms.”). Section 348(f)(1)(A) provides that, upon conversion of a chapter 13 case to chapter 7, property of the estate in the chapter 7 case shall consist of property of the estate as of the date of the filing of the petition that remains in the possession of or is under the control of the debtor on the date of conversion.[9] Debtor’s House was property of the estate as of the filing of the petition on October 14, 2024. After the sale of the House, and pre-conversion, the Standing Trustee received funds totaling $33,000.00 which were identifiable proceeds of the sale of the House. No one disputes that the Standing Trustee currently holds funds in the amount of $22,508.17 that are a portion of the $33,000.00 received from escrow for the sale of the House. Upon the Court’s entry of the August 20, 2026, Conversion Order, the $22,508.17 in funds held by the Standing Trustee became property of the chapter 7 estate.[10] The Order Granting

---

[9] Section 348(f)(1) does not apply if the debtor converts a case under chapter 13 to a case under another chapter in bad faith. *See* Section 348(f)(2). In that situation, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

[10] *See Matter of Castleman*, 75 F.4th 1052, 1058 (9th Cir. 2023) (ruling the plain language of

Motion to Modify Confirmed Plan provides that "[i]f the case is converted to a case under another chapter, or is dismissed, the property of the estate shall vest in accordance with applicable law." In other words, upon conversion, nothing in the Confirmed Modified Plan displaces the operation of applicable law (i.e., Section 348(f)).

Second, the mere fact the funds are not literally in Debtor's physical possession but are physically in the Standing Trustee's physical possession is not determinative. Section 348(f)(1)'s limitation on the property of a converted estate to include only property that "remains in the possession of or is under the control of the debtor on the date of conversion" applies to prevent creditors from seeking to recover funds that were lawfully spent during the chapter 13 proceeding. *See In re Brown*, 953 F.3d 617, 621 (9th Cir. 2020)(stating section 348(f)(1) prevents creditors from seeking to recover funds that were lawfully spent by the debtor for ordinary living

---

§ 348(f)(1) dictates that any property of the estate at the time of the original filing that is still in debtor's possession at the time of conversion once again becomes part of the bankruptcy estate, and the post-petition, pre-conversion appreciation in property value became property of the estate).

expenses during the Chapter 13 proceeding and therefore no longer property of the estate). For purposes of interpreting section 348(f)(1), the Ninth Circuit has utilized the concept of "constructive possession or control" and does not require the Debtor to have actual physical control of property for it to be considered part of the converted estate. *Id.* at 634 (holding that debtor's transfer of funds to his brothers, with the fraudulent purpose of avoiding payments to creditors, meant the funds remained within debtor's constructive possession or control, and hence should be considered property of the converted estate under § 348(f)(1)(A)). In this case, the Standing Trustee received the $22,508.17 in funds as part of a disbursement from escrow upon the closing of the sale of the House to fund Debtor's Confirmed Modified Plan payments to unsecured creditors. Prior to conversion, the Standing Trustee's receipt and possession of the funds for the purpose of administering the Debtor's Confirmed Modified Plan was sufficiently on behalf of the Debtor to constitute "constructive possession or control" by the Debtor for purposes of section 348(f)(1). Estate property, however, does not become property of the creditors until it

is distributed to them, and upon conversion the Standing Trustee had no authority to distribute any payments in accordance with the Confirmed Modified Plan.

Third, the Court disagrees with Applicant that the United States Supreme Court's ruling in *Harris v. Viegelahn*, 575 U.S. 510, 517 (2015) requires the Standing Trustee to disburse funds to pay Applicant's administrative expense claim. Nothing in *Harris* requires the Court to exclude from the converted chapter 7 estate the $22,508.17 in sales proceeds held by the Standing Trustee. In *Harris*, the Supreme Court resolved the question of the proper disposition of a debtor's undistributed postpetition wages in the amount of $5,519.22 following debtor's post-confirmation voluntary conversion of his case from Chapter 13 to Chapter 7. The Supreme Court ruled, absent a bad faith conversion, debtor's postpetition wages, including undisbursed funds in the hands of a trustee, ordinarily do not become part of the chapter 7 estate created by conversion. In reaching this conclusion, the Supreme Court observed that Section 348(f)(1)(A) provides that in a case converted from Chapter 13, a debtor's postpetition



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 33 of 45

earnings do not become part of the converted chapter 7 estate. *Id*. at 517. In other words, absent bad faith conversion, a debtor's postpetition earnings are not property of the estate as of the date of the filing of the petition. Thus, *Harris* stands only for the principle that, absent bad faith conversion, upon conversion of a chapter 13 case to a chapter 7 case, the trustee must return undistributed wages to the debtor. This outcome is consistent with not penalizing debtors by denying them funds that would have been theirs had the case proceeded under chapter 7 from the start. *Harris*, by its reasoning and holding, does not apply to exclude from the converted chapter 7 estate funds that are identifiable sales proceeds of real property that was property of the estate as of the date of the filing of the petition.

Fourth, Applicant's citations to *In re Hayden*, 2018 WL 3157020 (Bankr. D. Ariz. 2018), and *In re Brandon*, 537 B.R. 231 (Bankr. D. Md. 2015), do not support excluding the sale proceeds held by the Standing Trustee from the converted chapter 7 estate. Both *Hayden* and *Brandon* determined that section 1326(a)(2) supported payment of administrative expenses prior

to returning undistributed post-petition wages to the debtor when a chapter 13 case was converted to chapter 7 before a plan was confirmed.[11] Neither case, however, excluded funds from a converted chapter 7 estate that are identifiable proceeds of real property that was property of the estate as of the date of the filing of the petition.

Finally, the timing of the entry of the Order Granting Compensation does not favor Applicant. The Conversion Order was entered on August 20, 2026. At the time of conversion, section 348(f)(1)(A) defined property of the chapter 7 estate. The subsequent entry of the Order Granting Compensation on August 31, 2026, does not overrule section 348(f)(1)(A)'s application or alter its operation. Therefore, the Order Granting Compensation, providing the "Trustee shall make distributions to the Applicant in a one-time payment of $22,265.22 be paid as an 11 USC § 507(a)(2) administrative claim," could not be carried out by the Standing Trustee because his authority was already terminated by statute and he no

[11] LBR 3070-2(i)(2)(B) is consistent in that it provides if a case is converted before confirmation, the trustee is authorized to retain sufficient funds to pay a potential fee application under Section 503(b) before returning funds to the debtor.

longer had authority to distribute those funds to creditors. *See Harris*, 575 U.S. at 519 (stating the moment a case is converted from chapter 13 to chapter 7, the chapter 13 trustee is stripped of authority to provide the service of making disbursements to creditors). Further, after conversion, the Chapter 7 Trustee must distribute available funds to pay section 507(a)(2) administrative expense claims in compliance with sections 348(d) and 726(b). Under section 726(b), administrative claims incurred following the conversion of a case to chapter 7 and allowed under section 503(b) enjoy priority over section 503(b) administrative claims that were incurred prior to the conversion. *See In re Sun Runner Marine, Inc.*, 134 B.R. 4, 6 (B.A.P. 9th Cir. 1991) (ruling chapter 7 administrative expense claim had priority over chapter 11 superpriority administrative expense claim). Thus, the Chapter 7 Trustee will not be able to make any distributions on account of Applicant's Request for Administrative Expense Compensation until or unless adequate funds are generated to pay all allowed chapter 7 administrative expense claims. To the extent the Order Granting Compensation creates any uncertainty regarding how the Standing Trustee

should handle the sales proceeds he is holding, the Court intends the granting of the Standing Trustee's Motion for Instructions, as discussed below, to resolve his need for clarification.

### C. APPLICANT'S SUPPLEMENTAL MOTION FOR RECONSIDERATION IS DENIED BECAUSE APPLICANT HAS NOT DEMONSTRATED GROUNDS FOR RELIEF UNDER RULE 60(B)

Applicant challenges the Court's authority under section 1307(c) to order, sua sponte, conversion of the chapter 13 case to a chapter 7 case and requests the Court "set aside the order converting the case to Chapter 7 and dismiss the case." Applicant has failed to demonstrate any mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, fraud or misconduct, void or satisfied judgment, or any other reason that justifies relief from the Conversion Order. Because Debtor's counsel has not articulated any basis to grant relief under Rule 9024 the Court denies Applicant's Supplemental Motion for Reconsideration.

Applicant's main argument is its belief the Court did not have the authority to order, sua sponte, the conversion of Debtor's chapter 13 case to a chapter 7 case. To the extent Applicant is arguing "surprise" by the



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 37 of 45

Court's decision to convert, the Court rejects Applicant's arguments for two reasons. First, the Court ordered conversion at the August 19, 2026 hearing on the Standing Trustee's Motion to Dismiss which had been filed on February 10, 2026, and continued four times to August 19, 2026. Thus, the Court's order to convert was not truly sua sponte because the Court had discretionary authority to order conversion as an option to dismissal. *See In re Elkin*, 5 B.R. 21, 23 (Bankr. S.D. Cal. 1980)(converting chapter 13 case to chapter 7 and rejecting debtors' argument the court was limited to dismissal based on trustee's motion to dismiss and stating the trustee's motion to dismiss under 1307(c) gave notice the case could be dismissed or converted). Second, at no time did Debtor file a written motion to dismiss under section 1307(b), as required by Rule 1017(f)(2). Because Debtor did not file a motion to dismiss pursuant to section 1307(b) Debtor's absolute right to dismiss under section 1307(b) was not triggered.[12]

---

[12] Accordingly, this case is distinguishable from *In re Nichols*, 10 F.4th 956, 962 (9th Cir. 2021). In *In re Nichols*, the debtors had filed a written motion to dismiss pursuant to section 1307(b). The Ninth Circuit reversed the bankruptcy court's denial of debtors' motion to dismiss pursuant to section 1307(b) which was filed in response to a creditor's motion to convert pursuant to section 1307(c).

Furthermore, there is no "excusable neglect" supporting Debtor's failure to file a voluntary motion to dismiss under section 1307(b) that would justify vacating the Conversion Order. For the Court to find excusable neglect to exist, the Court must weigh or balance relevant factors, including: (1) the danger of prejudice to the nonmovant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In this case, vacating the Conversion Order would prejudice the Chapter 7 Trustee and Creditor Crites who have already expended time and effort post-conversion investigating Debtor's financial affairs. Applicant filed its Supplemental Motion for Reconsideration on October 14, 2026, almost two months after the Conversion Order was entered on August 20, 2026. Debtor could have chosen to dismiss voluntarily at any time after the Standing Trustee filed his Motion to Dismiss on February 10, 2026, and before the order converting the case was entered on August 20, 2026.

Debtor chose not to, and her decision not to seek voluntarily dismissal does not warrant the relief sought by Applicant. Applicant may not use a Rule 60(b) motion to avoid the consequences of intentional decisions by the Debtor that later result in an undesired outcome for both the Debtor and Applicant.

The Court's decision to convert this chapter 13 case to a chapter 7 case is firmly supported by the record. Section 1307(c) authorizes the Court to dismiss or convert a chapter 13 case for "cause". 11 U.S.C. § 1307(c). Bad faith provides "cause" to trigger § 1307(c). *In re Duran*, 630 B.R. 797, 809 (B.A.P. 9th Cir. 2021). To determine bad faith, a bankruptcy judge must review the "totality of circumstances." *In re Eisen*, 14 F.3d 469 (9th Cir. 1994); *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir. 1982). Under the "totality of circumstances" test, the following factors should be considered:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner,
>
> (2) the debtor's history of filings and dismissals,

> (3) whether the debtor only intended to defeat state court litigation,
>
> (4) whether egregious behavior is present.

*In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (citation modified). A finding of bad faith does not require fraudulent intent by the debtor. *Id.* No single factor is dispositive.

In this case, under the "totality of circumstances," the Court did not err in ordering conversion. On February 10, 2026, the Standing Trustee filed a motion to dismiss case pursuant to section 1307(c) citing material default under the Confirmed Modified Plan. Thereafter, the Court continued the hearing on the Standing Trustee's motion to dismiss from March 24, 2026, to May 5, 2026, June 9, 2026, August 4, 2026, and August 19, 2026. During this time, on May 14, 2026, Creditor Crites filed her POC 15 in the amount of $1,543,839.69 and, on June 30, 2026, Creditor Crites filed a motion to extend the deadline to file a proof of claim asserting she had not been notified of Debtor's bankruptcy case. By the July 14, 2026 hearing on Applicant's Second Amended Fee Application, the Court had already expressed concerned about Debtor's failure to give notice to

Creditor Crites of the bankruptcy case. On August 3, 2026, Creditor Crites filed her adversary complaint against Debtor. At the August 4, 2026 hearing on the Standing Trustee's Motion to Dismiss, the Court expressed discomfort with the Debtor having received substantial funds from the sale of her House without having provided notice to all her creditors. Finally, at the August 19, 2026 hearing, the Court observed that the Debtor received a large amount of money from the sale of the House when there was an unscheduled creditor who had a judgment against the Debtor. Debtor's omission of a creditor that held a judgment against her created an "injustice" under the circumstances. The Court expressed "it troubles me a lot that Debtor could simply walk away with this money".

From the facts and circumstances, there was ample basis for the Court to find the Debtor misrepresented her creditors in her Schedule E/F by omitting Creditor Crites. Additionally, there was ample basis in the record for the Court to determine Debtor's conduct in using her chapter 13 case to stay the foreclosure case, sell her House, and obtain $474,911.55 was egregious behavior when Debtor omitted Creditor Crites from receiving

notice of her bankruptcy case and prevented Creditor from receiving distributions under Debtor's 100% repayment plan. Finally, the Court had ample basis to conclude conversion would be in the best interest of creditors because a chapter 7 trustee would be able to investigate and potentially claw back any alleged improper post-petition transfers. Because the Court had, under the totality of circumstances, discretionary authority to convert the Debtor's chapter 13 case to a chapter 7 case, Applicant failed to state a reason to justify relief from the Conversion Order.

### D. UPON CONVERSION, PURSUANT TO 11 U.S.C. § 348(f)(1), THE STANDING TRUSTEE MUST TURN OVER ALL FUNDS HE IS HOLDING TO THE CHAPTER 7 TRUSTEE TO THE EXTENT SUCH FUNDS ARE PROCEEDS OF THE SALE OF THE HOUSE

Pursuant to section 348(f)(1)(A), upon conversion of this case, the $22,508.17 in funds held by the Standing Trustee became property of the chapter 7 estate. After a case is converted, the case is placed under chapter 7's governance, and no chapter 13 provision holds sway. Section 103(i) ("Chapter 13 ... applies only in a case under [that] chapter."). Section 348(e)



U.S. Bankruptcy Court - Hawaii #24-00950 Dkt # 178 Filed 11/25/26 Page 43 of 45

provides: “Conversion of a case under section…1307 of this title terminates the service of any trustee…that is serving in the case before such conversion.” The moment the case was converted from chapter 13 to chapter 7, the chapter 13 trustee was stripped of authority to provide any “service” such as making distributions to creditors. *See Harris*, 575 U.S. at 519. Accordingly, the Standing Trustee’s Motion for Instructions is granted, and the Court will direct him to deliver all funds in his possession to the Chapter 7 Trustee. To the extent any provision of the Order Granting Compensation may be construed to the contrary, such provision is of no further force and effect. For clarity, however, the Applicant is authorized to withdraw the sum of $37.00 from its Client Trust Account in partial satisfaction of the amounts sought in the Application as provided in the Order Granting Compensation.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter separate orders Denying Applicant’s Motion for Reconsideration, Denying Applicant’s

Supplemental Motion for Reconsideration, and Granting the Standing Trustee's Motion for Instructions.

**END OF CORRECTED MEMORANDUM DECISION**